IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ELIZABETH WYNNE,                    )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )    Civil Action No. 1:09cv15
                                    )
SIMA BIRACH, JR., <u>et</u> <u>al</u>.,        )
                                    )
        Defendants.                 )

## REPORT AND RECOMMENDATION

This matter came before the Court on plaintiff's Motions for
Default Judgment as to Sima Birach, Jr. (Dkt. No. 33) and Twin
Star Holdings, Inc. (Dkt. No. 34).  After no representative for
either defendant appeared at the hearing on plaintiff's Motions,
the undersigned Magistrate Judge took the matter under advisement
to issue this Report and Recommendation.

## I. INTRODUCTION

Plaintiff Elizabeth Wynne ("plaintiff") filed this action
against Sima Birach, Jr. ("Birach"), Twin Star Holdings, Inc.[1]
("Twin Star")(collectively "defaulting defendants") and Birach
Broadcasting Corp. ("BBC") on January 7, 2009, seeking an award
of compensatory and punitive damages, back and front pay, as well
as reasonable attorney's fees and costs.[2]  Plaintiff alleges

_____

[1] Twin Star Holdings is the successor corporation to Twin
Star Group and Twin Star.

[2] BBC was dismissed from the case on April 14, 2009 pursuant
to a Joint Stipulation of Dismissal between plaintiff and BBC and
pursuant to an Order by the Honorable T.S. Ellis, III.  (Dkt. No.
28.)

discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e ("Title VII"), multiple violations of the Virginia Human Rights Act, Va. Code Ann. § 2.2-3900 et seq ("Virginia Human Rights Act"), breach of contract, wrongful termination, and assault.

A citizen of California, plaintiff resides in San Diego. (Am'd Compl. ¶ 4.)  Defendant Twin Star is incorporated under the laws of the Commonwealth of Virginia and has a principal place of business in Fairfax.  (Id. ¶ 5.)  Defendant Birach, an individual, is a citizen of the Commonwealth of Virginia and resides in Fairfax, Virginia.  (Id. ¶ 7.)

## A. Jurisdiction and Venue

This Court has subject matter jurisdiction over the Title VII claims in this case pursuant to 28 U.S.C. § 1331.  (Am'd Compl. ¶ 2.)  Additionally, the Court has subject matter jurisdiction over the state law assault, wrongful discharge, and breach of contract claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and there is complete diversity between the parties.

Venue is appropriate in this District under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to this action occurred in this District.  (Am'd Compl. ¶ 3.)

## B. Process and Service

On January 14, 2009, plaintiff's private process server

delivered a copy of the Summons and Complaint to George Moran, registered agent for defendant Twin Star Holdings, Inc., at 4041 University Drive, Suite 301 in Fairfax, Virginia. (<u>See</u> Summons Returned Executed, Dkt. No. 3.) On April 21, 2009, plaintiff's private process server personally served a copy of the Summons and Amended Complaint on defendant Sima Birach, Jr. at 9668 Maymont Drive in Vienna, Virginia. (<u>See</u> Summons Returned Executed, Dkt. No. 30.)

## C. Grounds for Default Judgment

Defaulting defendants Twin Star and Birach have not appeared, answered, or otherwise filed any responsive pleadings in this matter. The Clerk entered default as to Twin Star on March 4, 2009 and as to Birach on May 18, 2009. (Dkt. Nos. 17, 32.) On May 26, 2009, plaintiff filed Motions for Default Judgment as to Twin Star and Birach. (Dkt. Nos. 33, 34.) A hearing on plaintiff's Motions was conducted on June 12, 2009. Plaintiff appeared through counsel at the hearing. When defaulting defendants failed to attend the hearing, the undersigned Magistrate Judge took this matter under advisement.

## II. <u>FACTUAL FINDINGS</u>

Upon a full review of the Amended Complaint, all relevant pleadings, plaintiff's Motions for Default Judgment, and the documents submitted in proof of damages, the undersigned Magistrate Judge finds that Plaintiff has established the

following facts.[3]

In August 2007, plaintiff began working for Twin Star Group. Upon the dissolution of Twin Star Group in November 2007, plaintiff worked for unincorporated entity Twin Star, which was incorporated as defendant Twin Star Holdings, Inc. in January 2008.[4]   (Am'd Compl. ¶ 4.)   Plaintiff's employment with defendant corporation continued until June 23, 2008.   (Id.)   Defendant Birach was the President and CEO of defendant Twin Star, and its predecessor entities, during all times relevant to the pending action and further controlled Twin Star's labor relations as the

_____

[3] The documents submitted in support of plaintiff's request for default judgment and in proof of damages include the Memorandum in Support of the Motion for Default Judgment as to Twin Star ("Mem. in Supp. of Default J. as to Twin Star") and accompanying Declaration of Alison Asarnow, Esq. as to Twin Star ("Asarnow Twin Star Aff.) (Dkt. No. 34) as well as the Memorandum in Support of the Motion for Default Judgment as to Sima Birach, Jr. ("Mem. in Supp. of Default J. as to Birach") and accompanying Declaration of Alison Asarnow, Esq. as to Birach, Jr. ("Asarnow Birach Aff."). (Dkt. No. 33.) In addition, plaintiff submitted a Declaration in Support of Default Judgment against Birach, Jr. ("Wynne Birach Aff.") and a Declaration in Support of Default Judgment against Twin Star ("Wynne Twin Star Aff."). (Dkt Nos. 40, 41.) Finally, on June 17, 2009, plaintiff submitted a supplemental declaration concerning her request for compensatory and punitive damages ("Wynne Supp. Aff."). (Dkt. No. 49.)

[4] Defaulting defendant Twin Star is incorporated under the laws of the Commonwealth of Virginia. (Am'd Compl. ¶ 5.) During the interim between the dissolution of Twin Star Group and the incorporation of defendant Twin Star Holdings, Inc., defaulting defendant Birach operated an unincorporated business named Twin Star. When it incorporated, defaulting defendant Twin Star Holdings, Inc. acquired all assets of the predecessor unincorporated company as well as those of Twin Star Group and continued to perform the same functions as both of the prior entities. Unless otherwise indicated, any mention of "Twin Star" in this Report and Recommendation shall be in reference to defendant Twin Star Holdings, Inc.

entity had no human resources personnel.  (Id. ¶¶ 8(a), (c).)
Defendant Twin Star was in the business of acquiring and
operating radio stations.  (Id. ¶ 10.)

Before joining the staff of Twin Star Group, plaintiff
worked as a consultant to the company from June through July
2007.  (Id. ¶ 11.)  In July 2007, the parties executed an oral
employment contract memorializing the agreement that plaintiff
would serve as Twin Star Group's Chief Marketing Officer in
exchange for an annual salary of $200,000.  (Id. ¶ 12; Wynne
Birach Aff. ¶ 10.)  In August 2007, the parties modified the
contract to include an annual salary of $150,000 and a bonus of
$50,000.  (Am'd Compl. ¶ 12; Wynne Birach Aff. ¶ 10.)  Plaintiff
never received the $50,000 bonus.  (Id.)

In December 2007, the parties negotiated a new employment
contract for plaintiff.  (Am'd Compl. ¶ 13; Wynne Birach Aff.
¶ 12.)  Under the new contract, which was for a three-year term
of employment beginning on January 1, 2008, plaintiff was to
receive an annual salary of $400,000.  (Id.)  The contract
further provided that Twin Star could terminate plaintiff without
cause upon thirty days' written notice.  (Id.)  In the event that
plaintiff was terminated without cause, she would be entitled to
the continued payment of the annual salary through the end of the
contract term.  (Wynne Birach Aff. ¶ 10.)

During the course of plaintiff's employment with defendant
Twin Star, defendant Birach repeatedly made inappropriate and
sexually-explicit comments to and/or about plaintiff and, on at

least one occasion, touched plaintiff without her consent.[5]
(Am'd Compl. ¶¶ 14, 25-36, 38-39, 41-44, 47, 49-50, 56, 58, 62-
64, 72; Wynne Birach Aff. ¶¶ 13, 24-39, 40-43, 46-48, 55-57, 61-
63.)  Plaintiff expressed concern to Tod Castleberry, Twin Star's
Chief Operating Officer, about defendant Birach's unrelenting
inappropriate and harassing behavior.  (Wynne Birach Aff. ¶ 46,
49.)  Mr. Castleberry agreed that plaintiff's concerns were
valid.[6]  (Id.)

In April 2008, defendant Birach informed plaintiff that he
wanted her to attend a conference in Las Vegas, Nevada.  (Wynne
Birach Aff. ¶ 44.)  Defendant Birach, plaintiff, Mr. Castleberry
and Rich Gjerulff, Twin Star's then-Chief Financial Officer, were
to attend the conference.  (Id. ¶ 45.)  Defendant Birach further
asked plaintiff to share a villa with him in Las Vegas.  (Id. ¶
46.)  Plaintiff declined the "invitation."  Fearful of further
unwelcome advances by defendant Birach, plaintiff asked her

---

[5] The pleadings include multiple examples of inappropriate
behavior by defendant Birach.  For example, in December 2007,
defendant Birach offered plaintiff an expensive designer handbag
if plaintiff would share a room with Birach and a female
colleague on an upcoming business trip.  (Wynne Birach Aff. ¶
13.)  In exchange for the bag, Birach wanted plaintiff to sleep
in the same bed with him and the female co-worker and take a
photograph as proof of the encounter.  (Id.)  Plaintiff refused
the offer and asked defendant Birach to stop making such
comments.  (Id.)  Defendant Birach also frequently sent plaintiff
inappropriate emails and commented upon her figure, appearance
and body parts.  (Id. ¶¶ 26-30, 32, 41.)  On more than one
occasion, defendant Birach propositioned plaintiff for sex and
even offered money in exchange.  (Id. ¶¶ 34-35.)

[6] Near the end of April 2008, Mr. Castleberry approached
plaintiff to express concern that plaintiff might be planning to
resign and encouraged plaintiff to remain with the company.
(Wynne Birach Aff. ¶ 60.)

husband to accompany her on the trip and informed defendant Birach that her husband would be traveling with her.  (<u>Id</u>. ¶ 47.) Defendant Birach angrily replied that plaintiff should have asked his permission before arranging to bring her husband on the trip.[7]  (<u>Id</u>. ¶ 48.)  Defendant Birach refused to speak to plaintiff and treated plaintiff in an openly hostile manner during the trip and after they had returned from the conference.[8] During the trip, defendant Birach accused plaintiff of "separating" herself from the group because she had brought her husband with her.  (<u>Id</u>. ¶¶ 52-53, 56.)

After returning from the Las Vegas conference, defendant Birach's hostile and dismissive behavior towards plaintiff escalated.  (<u>Id</u>. ¶ 59.)  For example, Birach excluded plaintiff from business meetings, refused to communicate with plaintiff, and held closed-door meetings in his office with other executives, but did not include plaintiff and refused to advise plaintiff about the business matters that had been discussed. (<u>Id</u>.)

On May 27, 2008, plaintiff joined the other members of the Executive Team, including defendant Birach, for drinks after

_____

[7] Plaintiff's husband purchased his own plane ticket in order to accompany plaintiff on the trip.  (Wynne Birach Aff. ¶ 48.)  Defendant Twin Star did not incur any additional cost as a result of plaintiff's husband accompanying her.

[8] For example, while they were in Las Vegas, defendant Birach checked plaintiff out of her room without first informing plaintiff.  As a result, plaintiff's belongings were collected from her room and sent to lost and found and she spent several hours retrieving them.  (Wynne Birach Aff. ¶ 58.)

work.  (<u>Id</u>. ¶ 63.)  The next day, Mr. Castleberry informed
plaintiff that after she had departed from the bar, defendant
Birach had stated to the rest of the group that he "was going to
rape" plaintiff.  (<u>Id</u>.)  Upon learning of this comment, plaintiff
began to fear for her safety.  (<u>Id</u>. ¶ 64.)

In addition to the sexual harassment he directed towards
plaintiff, defendant Birach instructed plaintiff to engage in
fraudulent business practices on behalf of defendant Twin Star.
For example, Birach directed plaintiff to submit a falsified
invoice requesting reimbursement for tenant improvement costs
that had not actually been made to defendant Twin Star's
building.  (Wynne Birach Aff. ¶ 66.)  Defendant Birach also
directed plaintiff to authorize subcontractors to begin work on
Twin Star's new offices in the amount of nearly $2.5 million,
despite Birach's knowledge that Twin Star could not afford to pay
the subcontractors and was on the verge of insolvency.  (<u>Id</u>.
¶ 67.)

In early June 4, 2008, plaintiff took time off to address
the stress she was facing as a result of the work environment.[9]
By letter dated June 23, 2008, plaintiff tendered her involuntary
resignation in order to avoid further harm to her mental or
physical health.  (Wynne Birach Aff. ¶ 71.)  Defendants opposed

---

[9] As a result of the stress she endured at work, plaintiff
became depressed and her hair began to fall out.  She was unable
to sleep well and her blood pressure, which had been normal
before, rose dramatically.  Plaintiff also began to avoid social
situations where she might be asked about work, became irritable
and emotional and experienced marital tension.  (Wynne Birach
Aff. ¶¶ 78-80.)

plaintiff's application for unemployment benefits.  (<u>Id</u>. ¶ 72.)

### III.  <u>EVALUATION OF PLAINTIFF'S COMPLAINT</u>

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted.  Before entering default judgment, however, the court must ensure that the complaint properly states a claim.  <u>GlobalSantaFe Corp. v. Globalsantafe.com</u>, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).  Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate the plaintiff's claims against the standards of Fed. R. Civ. P. 12(b)(6).

### A.  **Defendant Sima Birach, Jr.**

Plaintiff seeks damages from defendant Birach for discrimination on the basis of sex in violation of the Virginia Human Rights Act, wrongful termination in violation of public policy, breach of contract, and assault.  (Mot. for Default J. as to Birach 2; Am'd Compl. ¶¶ 116-132, 139-145, 156-157,[10] 165-177.)

Specifically, plaintiff alleges that defendant Sima Birach, Jr. discriminated against her on the basis of sex in violation of the Virginia Human Rights Act,[11] which prohibits employers

---

[10] Due to a misnumbering of paragraphs in the Amended Complaint, there are two sets of paragraphs numbered 148 through 157.  The relevant paragraphs outlining plaintiff's breach of contract allegations against defendant Birach appear in Counts Ten and Twelve, on pages 37 through 39 and 40 through 41.

[11] The Virginia Human Rights Act, Va. Code. § 2.2-3900, <u>et seq</u>., is intended to "[s]afeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex" in places of public accommodation and in employment.

employing more than five but less than 15 persons from discharging an employee on the basis of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions.  Va. Code Ann. § 2.2-2639(B).  According to plaintiff, defendant Birach subjected her to discriminatory treatment in violation of Section 2.2-2639(B) by creating a work environment that was so hostile that plaintiff was constructively discharged from her employment in June 2008.  Defendant Birach used his position as President and CEO of Twin Star Holdings and Twin Star Group and owner of Twin Star to retaliate against her.  (Am'd Compl. ¶ 96.)  Additionally, defendant Twin Star is a facade for the operations of defendant Birach as he syphoned corporate funds for his personal use, failed to adequately capitalize the corporation and failed to function in a manner pursuing the best interest of the corporation.  (Am'd Compl. ¶ 123; Supplemental Decl. ¶ 3.)  The Court recommends that defendant Twin Star be found to be a mere alter ego of defendant Birach and, therefore, defendant Birach is jointly and severally liable with defendant Twin Star for the violation of Section 2.2-2639(B).  (Am'd Compl. ¶ 123.)

Section 2.2-2630(C) of the Virginia Human Rights Act allows employees who are discharged in violation of Section 2.2-2639(B) to bring a cause of action against the employer.  Va. Code Ann. § 2.2-2639(B).  Courts may award up to 12 months' back pay if a violation has occurred.  Id.  Successful plaintiffs are also entitled to attorneys' fees from the amount recovered, not to exceed 25 percent of the back pay awarded.  Id.  No other damages

are available.  <u>Id</u>.

Plaintiff also brings breach of contract against defendant Birach with respect to the oral employment contract executed in July 2007 between plaintiff and entity Twin Star Group. Initially, the contract was for a $200,000 annual salary in exchange for plaintiff serving as Twin Star Group's Chief Marketing Officer.  Shortly after its initial execution, the parties orally modified the contract to provide for a $150,000 yearly salary and a $50,000 bonus.  Defendants failed to pay plaintiff the bonus, in violation of the contract.  As discussed above plaintiff has demonstrated that Twin Star Group, which was the predecessor of defendant Twin Star Holdings, was an alter ego of defendant Birach.  (Am'd Compl. ¶¶ 141-142.)  Thus, defendant Bircah is liable to plaintiff for $50,000 for the breach of the employment contract.

Count Ten alleges that defendant Birach is liable to plaintiff for the breach of the written employment contract executed on January 1, 2008.[12]  The contract was for a three-year term ending on January 1, 2011.  (Am'd Compl. ¶ 157.)  Section 4.1(b) of the employment contract requires defendant Twin Star to pay plaintiff her annual salary of $400,000 through the end of the contract term in the event plaintiff is terminated without cause before January 1, 2011.  Section 6.2 of the contract states that "[t]he Agreement shall be binding upon and inure to the

---

[12] The contract was between plaintiff and Twin Star, the unincorporated company that succeeded Twin Star Group and preceded defendant Twin Star Holdings, Inc.

benefit of the Company, its successors and assigns." As the successor in interest and assignee of Twin Star, defendant Twin Star Holdings, Inc. is bound by the employment contract.

Plaintiff was constructively discharged from her employment with defendant Twin Star Holdings on June 23, 2009 as a result of the constant sexual harassment and retaliation inflicted upon her by defendant Birach, Jr. (Am'd Compl. ¶ 148.[13]) Plaintiff's constructive discharge does not fall under the definition of "for cause" termination as outlined in Section 4.1(c) of the employment contract. (See id. ¶ 14.) Thus, plaintiff was entitled to be paid her annual salary of $400,000 through January 1, 2011. Defendants Twin Star Holdings and Sima Birach, Jr. breached the employment contract when they failed to continue to pay plaintiff following her constructive discharge. Thus, defendants are liable to plaintiff for the outstanding amount.

Plaintiff alleges wrongful termination in violation of public policy against defendant Birach, Jr. Virginia law recognizes an exception to the doctrine of employment-at-will based upon an employer's violation of public policy in the discharge of an employee. Bowman v. State Bank of Keysville, 299 Va. 534, 539-40, 331 S.E.2d 797, 800-01 (1985). An employer may not terminate an employee for refusing to engage in criminal activity. Rowan v. Tractor Supply Co., 263 Va. 209, 214, 559 S.E.2d 709, 711 (2002); Mitchem v. Counts, 259 Va. 179, 523 S.E.2d 246, 251 (2000)(recognizing a claim for wrongful discharge

---

[13] This particular paragraph 148 appears in Count Ten, on page 37.

on the ground that the employer's conduct compelled an employee
to engage in criminal conduct).  A plaintiff who asserts a cause
of action for wrongful termination must demonstrate that the
discharge occurred because of factors that violate Virginia's
public policy, but is not required to prove that the employer's
improper motive was the sole cause of the wrongful termination.
Shaw v. Titan Corp., 255 Va. 535, 542-43, 498 S.E.2d 696, 699-700
(1998).

Section 18.2-186 of the Virginia Code makes it a crime for a
person to procure a benefit for a firm or corporation, in which
she is interested, if the person knows a false statement has been
made in writing concerning the financial condition of any firm or
corporation in which she is acting in order to obtain delivery
and has the intention to defraud.

Plaintiff refused to violate Section 18.2-186 when she
refused to submit financial documents to prospective lenders,
which she had reason to believe were fraudulent.  (Am'd Compl.
¶¶ 67-69, 72, 170.)  Defendant Birach had directed plaintiff to
submit the documents, which he had prepared.  (Id. ¶ 69.)  In
response to plaintiff's refusals to violate the law, defendant
Birach stopped speaking to plaintiff and excluded her from
meetings she had previously been invited to attend.  (Id. ¶ 171.)
This behavior by defendant Birach, coupled with his constant
sexual intimidation and advances, created a work environment that
was so hostile as to constructively discharge plaintiff from her
employment with defendant Twin Star Holdings.

The Court finds that plaintiff's constructive discharge

13

constitutes wrongful termination in violation of public policy.
Specifically, plaintiff's discharge was a result of her refusal
to violate a Virginia criminal statute.  Wrongful termination is
a common law cause of action sounding in tort.  Shaw, 255 Va. at
545, 498 S.E.2d at 701; Bowman v. State Bank of Keysville, 299
Va. at 540, 331 S.E.2d at 801.  Indeed, the Supreme Court of
Virginia has recognized wrongful termination as an intentional
torts and "[w]hen a plaintiff pleads and prove an intentional
tort under the common law of Virginia, the trier of fact may
award punitive damages."  Shaw, 255 Va. at 545, 498 S.E.2d at
701; see also Smith v. Litten, 256 Va 573, 577, 507 S.E.2d 77, 79
(1998).  Punitive damages may be recovered in instances of
misconduct or actual malice, or in such situations where the
circumstances evince a conscious disregard of the rights of
others.  Litten, 256 Va. at 578-79, 507 S.E.2d at 80; Hamilton
Dev. Co. v. Broad Rock Club, 248 Va. 40, 45, 445 S.E.2d 140, 143
(1994).  In this instance, the Court finds that defendant
Birach's discharge of plaintiff for refusing to violate the
Virginia criminal code evinces a conscious disregard for the
rights of plaintiff and, thus, is eligible for an award of
punitive damages.[14]

---

[14] The Virginia Human Rights Act places certain limits upon
an employee's ability to recover punitive damages for wrongful
termination of employment.  Litten, 256 Va. at 577, 507 S.E.2d at
79.  Specifically, Section 2.2-2639(C) of the Virginia Human
Rights Act states that damages other than back pay are not
available for violations of the Act.  Va. Code. Ann. § 2.2-
2639(C).  However, the Act addresses only discharges on the basis
of race, color, religion, national origin, sex, pregnancy,
childbirth or related medical conditions.  As discussed above,

14

Plaintiff also alleges assault by defendant Birach.  In the Commonwealth of Virginia, "Common law assault, whether a crime or tort, occurs when an assailant . . . engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fee or apprehension in the victim." <u>Carter v.Commonwealth</u>, 269 Va. 44. 47, 606 S.E.2d 839, 841 2005)  In addition to touching plaintiff without her consent on various occasions,[15] defendant Birach made a threat to rape plaintiff in front of plaintiff's colleagues.  Defendant Birach knew or reasonably should have known that his comments would be communicated to plaintiff.  Defendant's threat, coupled with the unwanted touching and previous litany of inappropriate comments Birach had directed at plaintiff, placed plaintiff in reasonable apprehension of receiving imminent bodily harm.  (<u>Id</u>. ¶ 176.)

---

discharge for discriminatory reasons is only one of three ways a termination can violate public policy.  A violation on the grounds that the employee refused to violate a criminal law is a second avenue to proving wrongful termination and does not implicate the Virginia Human Rights Act.  Thus, punitive damages are available for wrongful terminations resulting from refusal to violate criminal law if the termination rises to the level of an intentional tort.

[15] For example, plaintiff visited Tod Castleberry in the hospital on March 25, 2008.  Defendant Birach was also present at the hospital and continually sexually harassed plaintiff during the visit.  After making various inappropriate and sexually-explicit remarks to plaintiff, defendant Birach reached over with his foot and rubbed his leg against plaintiff's leg.  Plaintiff, who had not consented to the touching by Birach, moved away and told Birach to stop touching her.  (Am'd Compl. ¶ 34.)  Overt acts sufficient to constitute assault include "an attempt or offer, with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end of carried into execution. . . ." <u>Harper v. Commonwealth</u>, 196 va. 723, 733, 85 S.E.2d 249, 255 (1955).

Accordingly, defendant Birach is liable to plaintiff for compensatory damages resulting from such assault.

## B.  Defendant Twin Star Holdings, Inc.

The Amended Complaint alleges a violation of the Virginia Human Rights Act, Va. Code § 2.2-399, et seq., by defendant Twin Star.[16]  The Virginia Human Rights Act prohibits an employer from discriminating against an employee on the basis of sex with regard to compensation, terms, conditions, or privileges of employment.  Specifically, as discussed above, Section 2.2-2639 prohibits discrimination on the basis of sex.

As outlined in greater detail above, defendant Twin Star maintained a work environment that was so hostile to plaintiff as to alter the conditions of her employment and create a sexually hostile environment in which plaintiff felt physically and mentally threatened.  The environment deteriorated to the point where plaintiff was constructively discharged from her employment.  The working condition at Twin Star, which included constant sexual berating, intimidated and ridicule by defendant Birach, was so intolerable that a reasonable person would have felt compelled to resign in order to ensure her own safety.

---

[16] In the Amended Complaint, plaintiff also asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et aeq. ("Title VII").  Plaintiff's Title VII allegations were brought against defendants Twin Star and BBC together on grounds that the two entities were "integrated" employers.  Since the Amended Complaint was filed, defendant BBC has been dismissed from the case.  The Title VII claims cannot proceed against defendant Twin Star alone.  Instead, the Court focuses on plaintiff's claims against defendant Twin Star for violations of the Virginia Human Rights Act.

Defendant Twin Star is liable for the actions of and environment created by defendant Birach, who served as the President and CEO of Twin Star during all times relevant.[17]

Plaintiff alleges breach of contract against defendant Twin Star Holdings based on its failure to comply with the oral employment contract entered into by defendant's predecessor in interest and plaintiff in July 2007.  As discussed in greater detail above, the employment contract provided for an annual salary of $150,000 for plaintiff and a $50,000 bonus.  (Id. ¶ 134.)  Defendants never paid plaintiff the $50,000 bonus, thereby breaching the contract.  Defendant Twin Star is jointly and severally liable with defendant Birach for the outstanding $50,000.

Similarly, plaintiff alleges breach of contract by defendant Twin Star regarding the written employment contract entered into by the parties in January 2008.  As discussed above, the employment contract was for a three-year term, ending on January 1, 2011 and plaintiff was to be paid her salary for the full three-year term in the event plaintiff was terminated without cause before the term expired.  (Id. ¶¶ 147, 150.)  Due to deplorable conditions of employment, plaintiff was constructively discharged on June 23, 2008.  (Id. ¶ 148.)  The facts and circumstances surrounding plaintiff's departure from defendant

_____

[17] Defendant Twin Star is also liable for the actions of Birach from August 2007 to January 1, 2008 because defendant Twin Star Holdings, which was created January 1, 2008, is the successor in interest to Twin Star Group and Twin Star, which existed from August 2007 through January 1, 2008.

Twin Star's employment do not fall within the definition of termination "for cause" as outlined in the contract. (Id. ¶ 149.) Thus, defendants were required by the employment contract to compensate plaintiff for the entire three-year term. Defendants failed to do so, thereby breaching the employment contract. At a salary of $400,000 annually, plaintiff is entitled to compensation of $1.2 million. Plaintiff has already received $183,333.37 of that amount. Accordingly, the undersigned finds defendant Twin Star is jointly and severally liable with defendant Birach for the remaining $1,016,66.63.

Plaintiff alleges wrongful termination of plaintiff by defendant Twin Star in violation of public policy. Specifically, plaintiff alleges that Twin Star improperly caused her constructive discharge in response to plaintiff's refusal to violate Virginia Code § 18.2-186. Plaintiff refused to submit financial documents to prospective lenders as directed by defendant Birach because she had a reason to believe that the documents were fraudulent. (Id. ¶¶ 160-161.) As a result, the hostile work environment plaintiff was already enduring worsened and she was forced to involuntarily resign her employment with defendant Twin Star. (Id. ¶ 162.) The undersigned finds that plaintiff's discharge resulted from her refusal to violate the law, which constitutes wrongful termination. As noted above, the circumstances evince a conscious disregard for plaintiff's rights and, thus, plaintiff is entitled to punitive damages. Defendant Twin Star is jointly and severally liable with defendant Birach

for those punitive damages.

### III. <u>RECOMMENDATION</u>

The undersigned Magistrate Judge recommends entry of judgment in the amount of $1,531,716.63 in favor of plaintiff.

Defaulting defendants' actions have caused, and continue to cause, plaintiff to suffer loss of income and other financial benefits, economic damages, including a loss of future professional opportunities and future income, as well as damage to her professional reputation.  Moreover, plaintiff is entitled to punitive damages for wrongful termination stemming from her refusal to violate a Virginia criminal law as defendants engaged in the actions with malice and reckless indifference to plaintiff's legal rights.

Pursuant to the January 1, 2008 employment contract, defendants must pay plaintiff her annual salary of $400,000 for the entire three-year period in the event that plaintiff is terminated without cause.  Plaintiff was constructively discharged by defendants on June 23, 2008, only six months into the three-year term.  The constructive discharge was termination without cause and, thus, defendants are required to compensate plaintiff for the amount owed through January 1, 2011.  A yearly salary of $400,000 for three years totals $1.2 million. Defendants paid plaintiff $183,333.37 before her departure in June 2008.  Thus, defendants owe plaintiff $1,061,666.63.

Defendants are also liable for the $50,000 they failed to pay plaintiff under the July 2007 employment contract.

Together, defendants Twin Star Holdings and Sima Birach, Jr. are liable to plaintiff, jointly and severally, for the total amount of $1,216,666.63.

Additionally, defendant Birach is liable to plaintiff for assault.  Defendant Birach's assault caused plaintiff to suffer high levels of anxiety, fear and stress.  (<u>See</u> Wynne Supp. Aff. ¶ 21.)  Plaintiff is entitled to compensatory damages from defendant Birach in the amount of $150,000.  The evidence demonstrates that defendant Birach engaged in the unlawful action against plaintiff with malice and reckless indifference to plaintiff's legal rights and, thus, plaintiff is entitled to an award of punitive damages as well.  Accordingly, the undersigned Magistrate Judge recommends that defendant Birach be found liable to plaintiff for $500,000, which includes $150,000 in compensatory damages and $350,000 in punitive damages.  The $500,000 amount against defendant Birach is in addition to the amount he owes, jointly and severally, with defendant Twin Star.

Finally, the undersigned recommends that defendants be held jointly and severally liable for plaintiff's reasonable attorney's fees and costs.

## IV. <u>NOTICE</u>

The parties are advised that exceptions to this Report and Recommendation pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure must be filed 10 days after service.  A failure to object waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and defendant at the following address:

Sima Birach, Jr.
9668 Maymount Drive
Vienna, Virginia 22182

Twin Star Holdings, Inc.
George Moran, Registered Agent
4041 University Drive, Ste 301
Fairfax, Virginia 22030

_____/s/_____
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

September 4, 2009
Alexandria, Virginia